

1  RANJANA NATARAJAN, SBN 230149
   MARK D. ROSENBAUM, SBN 59940
2  NORA ADRIANA PRECIADO, SBN 239235
   ACLU FOUNDATION OF SOUTHERN
3  CALIFORNIA
   1616 Beverly Blvd.
4  Los Angeles, CA 90026
   Telephone:  (213) 977-9500
5  Facsimile:  (213) 250-3919
   Email: rnatarajan@aclu-sc.org
6
   LINTON JOAQUIN, SBN 73547
7  KAREN C. TUMLIN, SBN 234691
   NATIONAL IMMIGRATION LAW CENTER
8  3435 Wilshire Blvd., Suite 2850
   Los Angeles CA 90010
9  Tel:  (213) 639-3900
   Fax:  (213) 639-3911
10 Email: Joaquin@nilc.org; Tumlin@nilc.org

11 Attorneys for Plaintiffs
   (See next page for additional counsel)
12

13            UNITED STATES DISTRICT COURT

14        FOR THE CENTRAL DISTRICT OF CALIFORNIA

15

16 | CARLOS GUILLERMO FLORES and | CASE NO.  SACV07-1394 DOC
17 | JAMES MOORHEAD, individually and on | (RNBx)
   | behalf of all those similarly situated,
18 |           Plaintiffs,            | **FIRST AMENDED**
   |                                  | **COMPLAINT FOR**
19 |           vs.                    | **DECLARATORY AND**
   |                                  | **INJUNCTIVE RELIEF–CLASS**
20 | MICHAEL B. MUKASEY, in his official | **ACTION; PETITIONS FOR**
   | capacity as Attorney General of the United | **NATURALIZATION**
21 | States; MICHAEL CHERTOFF, in his
   | official capacity as Secretary of the U.S.
22 | Department of Homeland Security;
   | EMILIO T. GONZALEZ in his official
23 | capacity as Director of U.S. Citizenship and
   | Immigration Services; JANE ARELLANO,
24 | in her official capacity as Field Director of
   | the Los Angeles District of U.S.
25 | Citizenship and Immigration Services; and
   | ROBERT S. MUELLER, III, in his official
26 | capacity as Director of the Federal Bureau
   | of Investigation,
27 |
   |           Defendants.
28

4397469.1

1

MARK B. HELM, SBN 115711
JACOB S. KREILKAMP, SBN 248210
MUNGER, TOLLES & OLSON LLP
355 South Grand Ave. 35th Floor
Los Angeles CA 90011-1560
Tel:    (213) 683-9260
Fax:    (213) 593-2960
Email: Jacob.Kreilkamp@mto.com; Mark.Helm@mto.com

JULIE SU, SBN 174279
MARK YOSHIDA, SBN 195778
YUNGSUHN PARK, SBN 239356
ASIAN PACIFIC AMERICAN LEGAL CENTER
1145 Wilshire Blvd., 2nd Floor
Los Angeles, CA 90017
Tel:    (213) 977-7500
Fax:    (213) 977-7595
Email: ypark@apalc.org

Attorneys for Plaintiffs

4397469.1

2

FIRST AMENDED COMPLAINT
SACV07-1394 DOC (RNBx)

1

2                    **JURISDICTION AND VENUE**

3        1.      Petitioners/Plaintiffs ("Plaintiffs") are lawful permanent residents of

4    the United States whose applications for naturalization have not been adjudicated in

5    accordance with statutory deadlines because of government agencies' use of certain

6    security checks that lack timelines for completion and are of questionable value.

7    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal

8    question), 5 U.S.C. § 701 *et seq*. (Administrative Procedure Act), and 28 U.S.C. §

9    2201 (Declaratory Judgment Act).  This Court also has jurisdiction pursuant to 8

10   U.S.C. § 1447(b) (adjudication of applications for naturalization pending more than

11   120 days from the date of the naturalization examination).  This Court may grant

12   declaratory and injunctive relief pursuant to 28 U.S.C. §§ 1361, 2202, and 5 U.S.C.

13   § 702.

14       2.      Venue is proper in the Central District of California pursuant to 28

15   U.S.C. § 1391(b) and § 1391(e).  Respondents/Defendants ("Defendants") are

16   officers or employees of agencies of the United States government who are sued in

17   their official capacity for their acts under color of legal authority. Venue is also

18   proper pursuant to 8 U.S.C. § 1447(b), which provides that petitions for review of

19   naturalization applications shall be filed in the district in which the applicants

20   reside.

21

22                        **INTRODUCTION**

23       3.      Plaintiffs are lawful permanent residents of the United States who have

24   lived in the United States for many years.  Plaintiffs have submitted applications to

25   naturalize as United States citizens to the United States Citizenship and

26   Immigration Services ("CIS").  However, their naturalization applications have not

27   been processed and adjudicated for over 300 days since the dates of submission

28   because each of their applications is awaiting completion of an "FBI name check,"

4397469.1                              3

1    which is a background check performed by the FBI using a person's name.

2        4.    Plaintiffs seek to pledge their allegiance to the United States and to

3    participate fully in our society as United States citizens. Having qualified to do so

4    after years of working in the United States and contributing to their communities,

5    Plaintiffs seek only what the law provides, which is a final decision on their

6    naturalization applications within the reasonable timelines required by law.

7        5.    Defendants, who are officers of CIS and the Federal Bureau of

8    Investigation ("FBI"), the Secretary of the Department of Homeland Security, and

9    the Attorney General of the United States, are responsible for the naturalization

10   process. In November 2002, Defendants drastically altered the naturalization

11   procedure by requiring a vastly expanded FBI name check to be conducted on every

12   application even though it is not required by either statute or regulation.

13   Implementation of this unwarranted and cumbersome new name check procedure

14   has resulted in months-long and even years-long delays in naturalization

15   adjudication for Plaintiffs and the proposed class.

16       6.    CIS's own Ombudsman has stated that the FBI name check used in

17   naturalization applications is of questionable value in detecting persons who may

18   pose a threat to security. Nevertheless, CIS uses the FBI name check without

19   imposing any deadlines for completion. In requiring and conducting name checks,

20   both CIS and the FBI have acted with complete disregard for Congress' plain

21   directive that CIS should complete the processing of naturalization applications

22   within six months from the date of submission. Through their use of FBI name

23   checks, CIS and the FBI have unreasonably delayed the processing of the

24   naturalization applications of Plaintiffs and the proposed class members, and CIS

25   has unlawfully withheld final adjudication of these applications.

26       7.    Defendants' unlawful conduct has deprived Plaintiffs of the privileges

27   of United States citizenship. Plaintiffs cannot vote, serve on juries, expeditiously

28   sponsor their immediate relatives living abroad for permanent residence, receive

1  business and education loans and benefits reserved for citizens, participate in the

2  Visa Waiver Program, or travel abroad and return to the U.S. without fear of

3  exclusion from this country. Plaintiffs' experiences are typical of tens of thousands

4  of other naturalization applicants around the country who have suffered

5  unreasonable and unlawful delays in the naturalization process because of pending

6  name checks.

7      8.    Plaintiffs respectfully request, on behalf of themselves and all others

8  similarly situated, that the Court certify the proposed class, enter judgment in favor

9  of the proposed class on all claims, and grant the relief requested herein.

10  Specifically, Plaintiffs request that the Court require the Defendants to adjudicate

11  their applications for naturalization within the time periods prescribed by law, and

12  declare that the Defendants' actions violate the naturalization statute and

13  regulations, laws governing administrative agency action, and the Due Process

14  Clause of the Fifth Amendment.

15

16                          **PARTIES**

17  **Plaintiffs**

18      9.    Plaintiff Carlos Guillermo Flores is a citizen of Mexico. He is a lawful

19  permanent resident of the United States, and he resides in Newbury Park,

20  California. He submitted his application for naturalization to CIS in March 2004.

21  CIS granted him a priority date on his application of March 18, 2004, and held his

22  naturalization examination in July 2004. His naturalization application has not

23  been adjudicated.

24      10.   Plaintiff James Moorhead is a citizen of the United Kingdom. He is a

25  lawful permanent resident of the United States, and he resides in North Hollywood,

26  California. He submitted his application for naturalization to CIS in September

27  2005 and re-submitted the application in December 2005. CIS granted him a

28  priority date on his application of January 17, 2006. CIS has not held his

4397469.1                          5

applicants for naturalization.  Mr. Mueller is sued here in his official capacity.

## LEGAL FRAMEWORK

### Naturalization Procedure

16.    Federal immigration law allows persons who have been residing in the United States as lawful permanent residents to become United States citizens through a process known as naturalization.

17.    A person seeking to naturalize must meet certain requirements under the INA, 8 U.S.C. § 1101 *et seq.*, including a sufficient period of physical presence in the United States; good moral character; and an understanding of the English language and the history and government of the United States.  8 U.S.C. §§ 1423, 1427(a).

18.    A person seeking to naturalize must submit an application for naturalization to CIS, along with a fee.  8 U.S.C. § 1445; 8 C.F.R. § 334.2.

19.    CIS is the agency that is responsible for adjudicating naturalization applications.  8 C.F.R. § 100.2.

20.    CIS has a policy of processing naturalization applications in chronological order, based upon date of receipt of the application and fee.  In accordance with this policy, when CIS receives a naturalization application and fee, CIS grants the applicant a "priority date" that is based on the date of receipt.  INS Operation Instruction 103.2(q), *available at* Operations Instructions of the Immigration and Naturalization Service (Matthew Bender, 2007) (Lexis Immigration Library, Operations Instructions of the INS File).

21.    Once CIS receives a naturalization application, it conducts a background investigation of the naturalization applicant.  8 U.S.C. § 1446(a); 8 C.F.R. § 335.1.

22.    In 1997, Congress enacted a law requiring the INS (the predecessor agency to CIS) to receive confirmation from the FBI that a "full criminal

1  background check" has been completed on each naturalization applicant prior to the

2  completion of adjudication of that application.  Public Law 105-119, Title I, 111

3  Stat. 2448-49 (Nov. 26, 1997).

4      23.    In March 1998, to implement the FBI criminal background check law,

5  the INS (CIS's predecessor agency) promulgated a proposed rule for notice and

6  public comment.  *See* Requiring Completion of Criminal Background Checks

7  Before Final Adjudication of Naturalization Applications, 63 Fed. Reg. 12979

8  (Mar. 17, 1998).  Thereafter, after receiving public comment, INS promulgated a

9  final regulation found at 8 C.F.R. § 335.2(b) to implement the 1997 law.

10     24.    Under 8 C.F.R. § 335.2(b), the FBI performs a criminal background

11  check on each naturalization applicant.  This criminal background check involves a

12  fingerprint check and database check that confirm whether or not the applicant has

13  an administrative or criminal record.  8 C.F.R. § 335.2(b).  Both of these criminal

14  background checks are usually completed within days if not hours.

15     25.    After CIS completes the background investigation and the FBI

16  completes the criminal background checks, CIS schedules a naturalization

17  examination, at which an applicant meets with a CIS examiner who is authorized to

18  ask questions and take testimony.  8 C.F.R. § 335.2(a).  The examination typically

19  includes questions testing the applicant's English literacy and basic knowledge of

20  the history and government of the United States.  8 C.F.R. § 335.2(c).

21     26.    The CIS examiner must determine whether to grant or deny the

22  naturalization application.  8 U.S.C. § 1446(d).  Naturalization is not discretionary.

23  CIS must grant a naturalization application if the applicant has complied with all

24  requirements for naturalization.  8 C.F.R. § 335.3.  CIS must make a final

25  determination on every naturalization application, either at the time of the

26  examination or, at the latest, within 120 days after the date of the examination.  8

27  C.F.R. § 335.3.

28     27.    Once an application is granted, CIS schedules the applicant for an oath

1    ceremony at which he or she is sworn in as a United States citizen.

2        28.    If CIS does not issue a decision within 120 days of the examination, an

3    applicant may file suit in district court under 8 U.S.C. § 1447(b). That statute

4    confers jurisdiction upon the district court in the district in which the applicant

5    resides, and it allows the court either to determine the matter (and grant or deny

6    citizenship) or to remand with appropriate instructions to CIS to determine the

7    matter. *United States v. Hovsepian*, 359 F.3d 1144 (9th Cir. 2004). A primary

8    purpose of that statute, enacted in 1990, was to decrease backlogs in the

9    naturalization process and reduce waiting times for naturalization applicants. H.R.

10   Rep. No. 101-187, at 8 (1989); 135 Cong. Rec. H4539-02, H4542 (1989) (statement

11   of Rep. Morrison).

12       29.    In addition, 8 U.S.C. § 1571(b) states, "It is the sense of Congress that

13   the processing of an immigration benefit application should be completed not later

14   than 180 days after the initial date of filing of the application[.]" Naturalization

15   applications are among the "immigration benefit applications" included within this

16   provision. This provision, along with 8 U.S.C. § 1571(a), § 1572, and § 1573,

17   make clear Congress' intent to eliminate persistent backlogs in the processing of

18   immigration benefit applications. Moreover, Congress has defined the term

19   "backlog" in the statute as "the period of time in excess of 180 days that such

20   application has been pending before the Immigration and Naturalization Service." 8

21   U.S.C. § 1572(1).

22       30.    8 U.S.C. § 1571(b) provides the statutory guideline and "rule of

23   reason" for determining whether naturalization applications are being processed in

24   a timely manner. Under the most straightforward reading of 8 U.S.C. § 1571(b), all

25   naturalization applications that are not finally adjudicated within 180 days of the

26   date of submission are unreasonably delayed.

27       31.    In the alternative, under the most generous possible reading of the

28   interaction between 8 U.S.C. § 1571(b), which sets forth the 180-day limit, and 8

1    U.S.C. § 1447(b), which grants CIS a 120-day "grace period" after the completion

2    of the naturalization examination before frustrated applicants may seek relief in

3    federal court, naturalization applications in which applicants have passed their

4    examinations but that have not been finally adjudicated within 300 days of

5    submission are unreasonably delayed.

6    **CIS Expansion of "FBI Name Checks"**

7        32.    Plaintiffs are informed and believe that CIS may have requested "FBI

8    name checks" for some subset of naturalization applicants in past years.  Plaintiffs

9    are informed and believe that these FBI name checks may have involved FBI

10   searches of an applicant's name through only its criminal files and databases.

11       33.    Plaintiffs are informed and believe that beginning in November 2002,

12   CIS dramatically altered the naturalization procedure by expanding the scope of the

13   FBI name check, both by requiring the FBI to make electronic and manual searches

14   of additional non-criminal FBI files and databases, and by requiring completion of

15   FBI name checks as a prerequisite to the final adjudication of every naturalization

16   application.

17       34.    The expanded FBI name check used by CIS for naturalization

18   applications is not part of the FBI criminal background checks that are required by

19   Public Law 105-119, Title I, 111 Stat. 2448-49 (Nov. 26, 1997) and implemented

20   pursuant to 8 § C.F.R. 335.2.

21       35.    When it expanded the FBI name check in November 2002, CIS did not

22   promulgate a proposed rule or give notice and an opportunity for public comment

23   on the rule, as it had done in 1998 when implementing the FBI criminal background

24   check requirement.

25       36.    The expanded FBI name check was a substantive departure from prior

26   CIS policy because it imposed a new requirement in naturalization procedure not

27   based on statute or regulations and because it has had a substantial adverse effect on

28   applicants for naturalization by causing significant delays in adjudication.  As such,

4397469.1                                 10

the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*., required CIS to promulgate a proposed rule, provide a notice and comment period, and thereafter promulgate a final rule prior to enacting the November 2002 expanded FBI name check.

37.    Plaintiffs are informed and believe that the expanded FBI name check consists of a search of a person's name through the FBI's criminal and non-criminal files in its Central Records System. The Central Records System contains administrative, applicant, criminal, personnel, and other FBI files. Plaintiffs are informed and believe that, since November 2002, the expanded FBI name check on naturalization applications includes an FBI search of not only criminal "main files" but also non-criminal "reference files" in the FBI's Central Records System. 40.

38.    By way of background, the FBI does not conduct name checks solely for the CIS. Rather, it conducts name checks on a fee-for-service basis in response to requests by other federal agencies, congressional committees, the federal judiciary, and state and local criminal justice agencies. Name checks may be sought for persons seeking government employment, a security clearance, attendance at a White House function, admission to the bar, or a visa for visiting the United States.

39.    Name checks are conducted by personnel in the FBI's National Name Check Program.

40.    CIS requests the FBI to conduct name checks on all applications for naturalization and applications for lawful permanent resident status.

41.    Plaintiffs are informed and believe that the scope of FBI name checks may vary based on the requesting agency. Plaintiffs are informed and believe that each FBI name check based upon a CIS request can involve up to four stages – batch processing, name searching, file review, and dissemination. Batch processing involves the transfer of applicant information from CIS to the FBI, uploading of that information into an FBI system, and electronic checking of those names against

1    the FBI's Universal Index. Name searching involves conducting manual electronic

2    searches by entering the applicant's name into FBI databases. File review involves

3    retrieving and reviewing FBI electronic and paper files that are identified as

4    possibly containing information on a particular individual whose name is being

5    checked. Files are reviewed for possible derogatory information on the applicant in

6    question. Dissemination involves providing a summary of the relevant information

7    to CIS.

8        42.    Plaintiffs are informed and believe that if the initial stages of a name

9    check yield a "No Record" result, indicating no identifiable FBI information

10   regarding a particular individual, the FBI does not search further, and it provides

11   the "No Record" result to CIS. At that point, the FBI considers the name check to

12   be complete. However, if the initial stages of a name check yield any indication

13   that the FBI has information on a particular individual, the FBI employs the later

14   stages of the name check to retrieve and review its files and search for derogatory

15   information, and report the results.

16       43.    Plaintiffs are informed and believe that since the November 2002

17   expansion, CIS does not adjudicate applications for naturalization until it receives

18   the results of a completed name check from the FBI.

19       44.    Plaintiffs are informed and believe that CIS and the FBI have entered

20   into written agreements regarding the conduct of FBI name checks on, among

21   others, applicants for naturalization, and that in these agreements neither CIS nor

22   the FBI impose any time limits for the completion of name checks.

23       45.    Plaintiffs are informed and believe that from time to time and under

24   certain circumstances, CIS requests the FBI to expedite the name checks of certain

25   individuals, including certain applicants for naturalization.

26       46.    Plaintiffs are informed and believe that beginning in April 2006, in

27   response to a deluge of lawsuits around the country brought by frustrated post-

28   examination naturalization applicants pursuant to 8 U.S.C. § 1447(b), CIS

1  implemented a new policy of refusing to schedule naturalization examinations for

2  those applicants whose FBI name checks were not completed.  CIS has stated that

3  an express purpose of this policy change was to preclude litigation under 8 U.S.C. §

4  1447(b) by those who have passed naturalization examinations and are awaiting

5  final adjudication of their naturalization applications.  As a result of this change in

6  policy, which appears to be an explicit effort to thwart Congress's intent to provide

7  delayed naturalization applicants with recourse to the federal courts, the

8  applications of substantial numbers of class members have been unreasonably

9  delayed, and naturalization examinations have not been scheduled because of

10  pending FBI name checks.

11  **Questionable Value and Adverse Effects of FBI Name Checks**

12      47.     Name checks are now a key cause of delays in the processing of

13  applications for naturalization, as well as applications for other immigration

14  benefits such as green cards.  In both 2006 and 2007, the CIS Ombudsman—the

15  individual tasked by Congress to provide recommendations on improving CIS

16  services and operations—declared that name checks "significantly delay

17  adjudication of immigration benefits for many customers, hinder backlog reduction

18  efforts, and may not achieve their intended security objectives."  Citizenship and

19  Immigration Services Ombudsman Annual Report 2006 (hereinafter "2006

20  Report"), at 23 (June 29, 2006) *available at* www.dhs.gov/cisombudsman;

21  Citizenship and Immigration Services Ombudsman Annual Report 2007

22  (hereinafter "2007 Report"), at 37 (June 11, 2007) *available at*

23  www.dhs.gov/cisombudsman (last visited December 4, 2007).

24      48.     In the most recent report, the Ombudsman declared that "FBI name

25  checks may be the single biggest obstacle to the timely and efficient delivery of

26  immigration benefits" and that the delays are getting worse, not better.  2007 Report

27  at 37.  The report noted that as of May 2007, over 329,000 CIS name checks were

28  pending, with 64 percent of those cases (over 211,000) pending more than 90 days,

4397469.1                                    13

1   and 32 percent (almost 107,000) pending more than one year. *Id.* at 37. The report

2   also found that the problem of long-pending name checks has worsened in the last

3   year. *Id.*

4       49.    The Ombudsman also questioned the value of FBI name checks in

5   accomplishing their stated purpose, which is to detect persons who should be

6   denied immigration benefits because they pose a danger or threat to security. In

7   response to CIS's claims of effectiveness, the Ombudsman declared that "most, if

8   not all, of the problem cases which would result in an eventual denial of benefits

9   also can be revealed by the other more efficient, automated criminal and security

10  checks that USCIS initiates." 2007 Report at 41.

11      50.    Moreover, the Ombudsman "agree[d] with the assessment of many

12  case workers and supervisors at USCIS field offices and service centers that the FBI

13  name check process has limited value to public safety or national security,

14  especially because in almost every case the applicant is in the United States during

15  the name check process, living or working without restriction." 2007 Report at 40.

16  In further acknowledgment of the limited use of name checks, the Ombudsman

17  noted that "[n]ame checks are not conducted by the FBI as part of ongoing

18  investigations or from a need to learn more about an individual because of any

19  threat or risk perceived by the FBI." 2007 Report at 38.

20      51.    In addition, "[t]o date, the Ombudsman has been unable to ascertain

21  from USCIS the total number of actual problem cases that the agency discovered

22  exclusively as a result of the FBI name check." 2007 Report at 41. Indeed, neither

23  CIS nor the FBI has ever shown that naturalization applicants, as a class, pose a

24  special danger or threat to security. In addition, neither CIS nor the FBI has ever

25  shown that the FBI name check alone has led to the detection of even *one*

26  naturalization applicant who posed a danger or threat to security.

27      52.    Finally, according to the Ombudsman, the FBI has admitted "that it

28  lacks the resources to perform the [CIS name check] function in a timely manner."

4397469.1                                    14

1    2007 Report at 39.

2

3                          **STATEMENT OF FACTS**

4    **Plaintiffs**

5           53.    Plaintiff Carlos Guillermo Flores is a native and citizen of Mexico

6    who came to the United States in 1992 on a temporary visa. Mr. Flores has been a

7    lawful permanent resident since 2001. He lives with his wife of nearly ten years—a

8    U.S. citizen—in Newbury Park, California.

9           54.    Mr. Flores worked for over ten years as a public school teacher in

10   California. He currently writes a regular column in a Spanish-language newspaper

11   regarding current events.

12          55.    Mr. Flores submitted his application for naturalization to CIS in March

13   2004. He provided all necessary information in support of his application,

14   including his fingerprints. CIS granted a priority date on his naturalization

15   application of March 18, 2004.

16          56.    CIS held his naturalization examination in July 2004. He passed his

17   examination. He meets all statutory requirements for citizenship.

18          57.    CIS has not adjudicated his application for naturalization because of a

19   pending FBI name check. Despite his numerous inquires with CIS and the

20   intervention of his United States Senator, Barbara Boxer, CIS has failed to

21   adjudicate his application. CIS officials have informed Mr. Flores that the delay in

22   adjudication is due solely to a pending FBI name check.

23          58.    Mr. Flores would like to become a U.S. citizen so that he can vote,

24   including in the upcoming presidential election, be politically active on behalf of

25   candidates he supports, and enjoy the privileges of U.S. citizenship. In addition,

26   Mr. Flores feels he must censor his writing in his regular newspaper column due to

27   his lack of citizenship status, and for that reason does not cover many of the

28   political issues that he would like to in his column.

4397469.1                              15

59.    Plaintiff James Moorhead is a native and citizen of the United Kingdom.  He has resided in the United States since 1976 as a lawful permanent resident.  He currently resides in North Hollywood, California.

60.    Mr. Moorhead works in the recycling business, based in the Los Angeles area.

61.    Mr. Moorhead submitted an application for naturalization to CIS in September 2005 and re-submitted the application in December 2005.  He provided all necessary information in support of his application, including his fingerprints.  CIS granted a priority date on his naturalization application of January 17, 2006.

62.    CIS has not scheduled Mr. Moorhead for a naturalization examination.  Mr. Moorhead has inquired with his Congressional representatives and CIS and FBI officials about his case.  CIS notified him that the sole reason that his naturalization application has not been processed or an examination scheduled is because of a pending FBI name check.

63.    Mr. Moorhead would like to become a U.S. citizen so that he can vote in U.S. elections, serve on juries, and enjoy the privileges of U.S. citizenship.

**Defendants' Policies And Practices**

64.    Plaintiffs are informed and believe that Defendants Chertoff, Gonzalez, and Arellano have a policy, pattern, and practice of failing to process and adjudicate the applications for naturalization of the proposed plaintiff class in accordance with statutory deadlines, namely within 180 days of the date of submission of such applications, and within 120 days of the date of naturalization examinations, because of pending FBI name checks.

65.    Plaintiffs are informed and believe that Defendants Chertoff, Gonzalez, and Arellano have a policy, pattern, and practice of unlawfully withholding and unreasonably delaying the processing and adjudication of applications for naturalization of the proposed plaintiff class, in utter disregard of statutory deadlines, because of pending FBI name checks.

66.    Plaintiffs are informed and believe that Defendants Chertoff, Gonzalez, and Arellano have a policy, pattern, and practice of unlawfully failing to take all necessary steps to complete FBI name checks in a timely manner so as to allow CIS to process and adjudicate the applications for naturalization of the proposed plaintiff class within 180 days of the date of submission of such applications, and within 120 days of the date of naturalization examinations, in accordance with statutory deadlines.

67.    Plaintiffs are informed and believe that Defendants Mukasey and Mueller have a policy, pattern, and practice of failing to complete FBI name checks in a timely manner, with the full knowledge that CIS requires the completion of such name checks for processing and adjudication of applications for naturalization of the proposed plaintiff class, and with the full knowledge that the statutory deadlines require CIS to process and adjudicate such applications within 180 days of the date of submission, and within 120 days of the date of naturalization examinations.  Defendants Mukasey and Mueller's actions and omissions result in the unlawful withholding of and unreasonable delays in the completion of FBI name checks.

68.    Plaintiffs are informed and believe that Defendants have a policy, pattern, and practice of failing to set deadlines for completing FBI name checks and taking all the other reasonable steps necessary to complete the adjudication of applications for naturalization of the proposed plaintiff class, in utter disregard of statutory deadlines that require CIS to process and adjudicate such applications within 180 days of the date of submission, and within 120 days of the date of naturalization examinations.

69.    Plaintiffs are informed and believe that Defendants Chertoff, Gonzalez, and Arellano have a policy, pattern and practice of unlawfully requiring FBI name checks for adjudication of applications for naturalization of the proposed plaintiff class, despite the lack of any statutory or regulatory authorization for such

1  name checks.

2       70.    Plaintiffs are informed and believe that Defendants Mukasey, Chertoff,

3  Gonzalez, and Arellano unlawfully expanded the FBI name checks in November

4  2002, as set forth above, without giving notice to the public and allowing a period

5  for public comment and without promulgating a regulation. Requiring name checks

6  as a prerequisite to naturalization effected a substantive change in existing law,

7  resulting in substantial and undue hardship and burden to the proposed plaintiff

8  class.

9       71.    As a result of the Defendants' policies, practices, actions, and

10  omissions described herein, members of the proposed plaintiff class have suffered

11  injury, in that they have been unlawfully denied the rights and benefits of U.S.

12  citizenship.  Among other things, members of the proposed plaintiff class have been

13  unable to vote in local, state, and national elections that have occurred since the

14  adjudication of their naturalization applications, including state and national

15  elections in 2006.  They have been unable to sponsor expeditiously their immediate

16  relatives living abroad for permanent residence in the United States.  They have

17  been unable to travel freely outside of the United States because they do not have

18  U.S. passports and the guarantee of re-admission into the country upon their return.

19  Finally, they have been unable to apply for certain types of employment,

20  educational grants and loans, and other benefits that are limited to U.S. citizens.

21

22                       **CLASS ALLEGATIONS**

23       72.    Plaintiffs bring this action on behalf of themselves and all other

24  persons similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and

25  23(b)(2).  The class, as proposed by Plaintiffs, consists of:

26           All lawful permanent residents who have submitted or will submit

27           applications for naturalization to the CIS Los Angeles District Office

28           and its sub-offices, and whose applications for naturalization have not

4397469.1                                18

1    been or will not be adjudicated by CIS for over 300 days from the date

2    of submission, because of pending FBI name checks, excluding those

3    individuals who have filed and have pending individual actions

4    relating to this subject matter.

5    73.    The proposed Plaintiff class includes a sub-class of Plaintiffs

6    (hereinafter referred to as the "Post-Examination Plaintiffs") that consists of:

7    All lawful permanent residents who have submitted or will submit

8    applications for naturalization to the CIS Los Angeles District Office

9    and its sub-offices, who have passed or will pass their naturalization

10   examinations, whose applications for naturalization have not been or

11   will not be adjudicated by CIS for over 300 days from the date of

12   submission, and whose applications for naturalization have not been or

13   will not be adjudicated by CIS for over 120 days from the date of the

14   naturalization examination, because of pending FBI name checks,

15   excluding those individuals who have filed and have pending

16   individual actions relating to this subject matter.

17   74.    The requirements of Federal Rules of Civil Procedure 23(a) and

18   23(b)(2) are met in that the class is so numerous that joinder of all members is

19   impracticable.  Counsel for Plaintiffs are aware of at least two dozen proposed class

20   members who are similarly situated to the named Plaintiffs.

21   75.    There are questions of law and fact common to the proposed class that

22   predominate over any questions affecting only the individually named Plaintiffs,

23   including: (1) whether CIS's actions and omissions, including its failure to

24   adjudicate the naturalization applications of the proposed plaintiff class within 180

25   days of the date of submission because of pending FBI name checks, and its failure

26   to impose deadlines on the completion of FBI name checks in accordance with

27   statutory deadlines, violate the Immigration and Nationality Act and implementing

28   regulations and constitute unreasonable delay and unlawful withholding of agency

4397469.1                                      19

1    bono counsel, including the ACLU of Southern California, the National

2    Immigration Law Center, the Asian Pacific American Legal Center, and the law

3    firm of Munger, Tolles & Olson LLP, who have extensive expertise in class action

4    litigation, including litigation regarding the rights of immigrants.  Finally,

5    Defendants have acted on grounds generally applicable to the class, thereby making

6    appropriate final injunctive relief with respect to the class as a whole.

7

8                              **FIRST CLAIM FOR RELIEF**

9          **<u>VIOLATIONS OF THE ADMINISTRATIVE PROCEDURE ACT</u>**

10    **<u>ALL PLAINTIFFS AGAINST DEFENDANTS CHERTOFF, GONZALES</u>**

11                              **<u>AND ARELLANO</u>**

12          78.    Plaintiffs reallege and reassert the foregoing paragraphs as if set forth

13    fully herein.

14          79.    The Administrative Procedure Act requires administrative agencies to

15    conclude matters presented to them "within a reasonable time."  5 U.S.C. § 555.  A

16    district court reviewing agency action may "compel agency action unlawfully

17    withheld or unreasonably delayed."  5 U.S.C. § 706(1).  The court also may hold

18    unlawful and set aside agency action that, inter alia, is found to be: "arbitrary,

19    capricious, an abuse of discretion, or otherwise not in accordance with law," 5

20    U.S.C. § 706(2)(A); "in excess of statutory jurisdiction, authority, or limitations, or

21    short of statutory right," 5 U.S.C. § 706(2)(C); or "without observance of procedure

22    required by law," 5 U.S.C. § 706(2)(D).  "Agency action" includes, in relevant part,

23    "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof,

24    or failure to act."  5 U.S.C. §551(13).

25          80.    The actions and omissions of Defendants Chertoff, Gonzalez, and

26    Arellano in failing to adjudicate the applications for naturalization of the proposed

27    plaintiff class within 180 days of the date of submission because of pending FBI

28    name checks, in violation of 8 U.S.C. § 1446(d), 8 U.S.C. § 1447(b) 8 U.S.C. §

1  1571(b), and 8 C.F.R. § 335, violate the Administrative Procedure Act, 5 U.S.C. §

2  555(b); 5 U.S.C. §§ 706(1), 706(2)(A), 706(2)(C), 706(2)(D).

3          81.    The actions and omissions of Defendants Chertoff, Gonzalez, and

4  Arellano in failing to set deadlines for completing FBI name checks and to take all

5  the other reasonable steps necessary to complete the adjudication of applications for

6  naturalization of the proposed plaintiff class within 180 days of the date of

7  submission because of pending FBI name checks, in violation of 8 U.S.C. §

8  1446(d), 8 U.S.C. § 1447(b), 8 U.S.C. § 1571(b), and 8 C.F.R. § 335, violate the

9  Administrative Procedure Act, 5 U.S.C. § 555(b); 5 U.S.C. §§ 706(1), 706(2)(A),

10  706(2)(C), 706(2)(D).

11          82.    Defendants have a duty under 8 U.S.C. § 1446(d), 8 U.S.C. § 1447(b)

12  8 U.S.C. § 1571(b), and 8 C.F.R. § 335 to finally adjudicate Plaintiffs'

13  naturalization applications within the deadlines imposed by statute and regulations.

14  Defendants' unlawful conduct in failing to do so has resulted in, inter alia,

15  unreasonable delays in and unlawful withholding of the adjudication of Plaintiffs'

16  naturalization applications.  As a result of Defendants' actions in utter indifference

17  to statutory deadlines, Plaintiffs have suffered and continue to suffer injury.

18  Declaratory and injunctive relief are therefore warranted.

19                          **SECOND CLAIM FOR RELIEF**

20          **VIOLATIONS OF THE ADMINISTRATIVE PROCEDURE ACT**

21  **ALL PLAINTIFFS AGAINST DEFENDANTS MUKASEY AND MUELLER**

22          83.    Plaintiffs reallege and reassert the foregoing paragraphs as if set forth

23  fully herein.

24          84.    The Administrative Procedure Act requires administrative agencies to

25  conclude matters presented to them "within a reasonable time."  5 U.S.C. § 555.  A

26  district court reviewing agency action may "compel agency action unlawfully

27  withheld or unreasonably delayed."  5 U.S.C. § 706(1).  The court also may hold

28  unlawful and set aside agency action that, inter alia, is found to be: "arbitrary,

1    capricious, an abuse of discretion, or otherwise not in accordance with law," 5

2    U.S.C. § 706(2)(A); "in excess of statutory jurisdiction, authority, or limitations, or

3    short of statutory right," 5 U.S.C. § 706(2)(C); or "without observance of procedure

4    required by law," 5 U.S.C. § 706(2)(D). "Agency action" includes, in relevant part,

5    "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof,

6    or failure to act." 5 U.S.C. §551(13).

7        85.    The failure of Defendants Mukasey and Mueller to timely complete

8    FBI name checks, or to set or adhere to any timelines for completion of FBI name

9    checks, with the full knowledge that CIS requires the completion of such name

10    checks for adjudication of applications for naturalization of the proposed plaintiff

11    class, and with the full knowledge of the statutory deadlines and requirements for

12    adjudication of naturalization applications pursuant to 8 U.S.C. § 1446, 8 U.S.C. §

13    1447(b), 8 U.S.C. § 1571(b), and 8 C.F.R. § 335, violates the Administrative

14    Procedure Act, 5 U.S.C. § 555(b); 5 U.S.C. §§ 706(1), 706(2)(A), 706(2)(C),

15    706(2)(D).

16        86.    Defendants Mukasey and Mueller have a duty pursuant to the

17    Administrative Procedure Act, agreements with CIS, and Executive Order 10450, to

18    timely complete CIS-initiated name checks for naturalization applications, given

19    Defendants' full knowledge that FBI name checks are required to finally adjudicate

20    Plaintiffs' naturalization applications within the deadlines imposed by statute and

21    regulations. Defendants' unlawful conduct in failing to do so has resulted, inter

22    alia, in unreasonable delays in and unlawful withholding of the adjudication of

23    Plaintiffs' naturalization applications. As a result of Defendants' actions in utter

24    indifference to statutory deadlines, Plaintiffs have suffered and continue to suffer

25    injury. Declaratory and injunctive relief are therefore warranted.

## THIRD CLAIM FOR RELIEF

## PETITIONS FOR NATURALIZATION

4397469.1

23

**POST-EXAMINATION PLAINTIFFS AGAINST DEFENDANTS**

**CHERTOFF, GONZALES, AND ARELLANO**

87.     Plaintiffs reallege and reassert the foregoing paragraphs as if set forth fully herein.

88.     Defendants have failed to finally adjudicate the Post-Examination Plaintiffs' applications for naturalization within 120 days of the date of their naturalization examinations, in violation of 8 U.S.C. § 1447(b).  Pursuant to 8 U.S.C. § 1447(b), this Court should exercise its authority to grant the Post-Examination Plaintiffs' naturalization applications, or to remand to CIS with appropriate instructions to complete the FBI name checks and to finally adjudicate these Plaintiffs' applications thereafter within a reasonable time period, as set forth in the prayer for relief below.

89.     Named Plaintiff Flores seeks a determination by the Court that he meets the requirements for naturalization and is to be naturalized as a U.S. citizen without further delay, pursuant to 8 U.S.C. § 1447(b).

**FOURTH CLAIM FOR RELIEF**

**VIOLATION OF DUE PROCESS CLAUSE**

**ALL PLAINTIFFS AGAINST ALL DEFENDANTS**

90.     Plaintiffs reallege and reassert the foregoing paragraphs as if set forth fully herein.

91.     The Due Process Clause of the Fifth Amendment prohibits the government from depriving any person of life, liberty or property without due process of law.  U.S. CONST., AMEND. V.

92.     Defendants Chertoff, Gonzalez, and Arellano have a pattern, practice, or policy of failing to adjudicate the applications for naturalization of the proposed plaintiff class within 180 days of the date of submission of such applications and within 120 days of the date of naturalization examinations because of pending FBI name checks, in violation of 8 U.S.C. § 1446(d), 8 U.S.C. § 1447(b), 8 U.S.C. §

4397469.1

24

1 1571, and 8 C.F.R. § 335.

2  93. Defendants Mukasey and Mueller have a pattern, practice, or policy of

3 failing to timely complete FBI name checks, with the full knowledge that CIS

4 requires the completion of such "name checks" for adjudication of applications for

5 naturalization of the proposed plaintiff class within the statutory deadlines.

6  94. Defendants have a pattern, practice, or policy of failing to set deadlines

7 for completing "name checks" and to take all the other reasonable steps necessary

8 to complete the adjudication of applications for naturalization of the proposed

9 plaintiff class within 180 days of the date of submission of such applications and

10 within 120 days of the date of naturalization examinations because of pending FBI

11 name checks, in violation of 8 U.S.C. § 1446(d), 8 U.S.C. § 1447(b), 8 U.S.C. §

12 1571, and 8 C.F.R. § 335.

13  95. The above-described actions and omissions by Defendants violate

14 Plaintiffs' rights to due process of law. As a result of Defendants' actions, Plaintiffs

15 have suffered and continue to suffer injury. Declaratory and injunctive relief are

16 therefore warranted.

17

18       **FIFTH CLAIM FOR RELIEF**

19 **VIOLATION OF NOTICE-AND-COMMENT REQUIREMENTS OF THE**

20     **ADMINISTRATIVE PROCEDURE ACT**

21 **ALL PLAINTIFFS AGAINST DEFENDANTS CHERTOFF, GONZALES,**

22        **AND ARELLANO**

23  96. Plaintiffs reallege and reassert the foregoing paragraphs as if set forth

24 fully herein.

25  97. Defendants Chertoff, Gonzales and Arellano's actions in November

26 2002 to expand the FBI name check for naturalization applications constitute a rule

27 within the meaning of 5 U.S.C. § 551(4).

28  98. The Administrative Procedures Act, 5 U.S.C. § 553, requires

4397469.1

1  administrative agencies to provide a notice-and-comment period prior to

2  implementing a substantive rule, including a rule that is a departure from prior

3  policy and practice and that has a substantial adverse effect upon a large number of

4  those affected.

5        99.    Defendants Chertoff, Gonzales, and Arellano's actions and omissions

6  in failing to provide a notice-and-comment period prior to the November 2002

7  expansion of the FBI name check requirement violated 5 U.S.C. § 553 in that the

8  expansion constituted a substantive rule that departed from prior policy and practice

9  and has had a substantial adverse effect upon a large number of those affected,

10  namely naturalization applicants.

11        100.  As a result of Defendants' actions and omissions, Plaintiffs were

12  injured, and declaratory and injunctive relief is appropriate.

13

14                                   **PRAYER FOR RELIEF**

15        WHEREFORE, Plaintiffs respectfully request that the Court:

16        1.     Assume jurisdiction over the matter;

17        2.     Certify the class of Plaintiffs and the sub-class of Post-Examination

18  Plaintiffs, as proposed herein;

19        3.     Review de novo and grant the naturalization of Plaintiff Flores,

20  pursuant to 8 U.S.C. § 1447(b);

21        4.     With respect to the certified class of Plaintiffs, and the sub-class of

22  Post-Examination Plaintiffs, order Defendants to: (a) take all necessary steps to

23  complete all FBI name checks of class members within a reasonable time period not

24  to exceed 45 days from the date of the Court's order; and (b) finally adjudicate all

25  naturalization applications of class members within a reasonable time period not to

26  exceed 90 days from the date of the Court's order.

27        5.     Enjoin Defendants and order them to: (a) take all necessary steps to

28  complete all FBI name checks of naturalization applicants within 90 days from the

4397469.1                            26

1   date of submission of the applications; (b) finally adjudicate all naturalization

2   applications within 180 days from the date of submission; and (c) finally adjudicate

3   all naturalization applications within 120 days from the date of the naturalization

4   examination.

5       6.   Order Defendants Chertoff, Gonzales, and Arellano to revoke and

6   suspend the November 2002 expansion of the FBI name check with respect to

7   naturalization applications, until such time as Defendants have completed

8   promulgating a rule following the process for notice and comment by the public;

9       7.   Issue a declaratory judgment holding unlawful:

10  (a)   the actions and omissions of Defendants Chertoff, Gonzalez, and Arellano in

11  failing to adjudicate applications for naturalization within 180 days of the date of

12  submission, because of pending FBI name checks;

13  (b)   the actions and omissions of Defendants Mukasey and Mueller in failing to

14  timely complete FBI name checks to allow CIS to adjudicate applications for

15  naturalization within 180 days of the date of submission;

16  (c)   the actions and omissions of Defendants Chertoff, Gonzalez, and Arellano in

17  failing to adjudicate applications for naturalization within 120 days of the date of

18  the naturalization examination, because of the pending FBI name checks; and

19  (d)   the actions and omissions of all Defendants in failing to set deadlines and to

20  take all necessary steps to adjudicate applications for naturalization within 180 days

21  of the date of submission and within 120 days of the date of the naturalization

22  examinations.

23      8.   Award reasonable attorney fees and costs pursuant to the Equal Access

24  to Justice Act, 5 U.S.C. § 504, 28 U.S.C. § 2412; and

25  ///

26  ///

27  ///

28  ///

FIRST AMENDED COMPLAINT
SACV07-1394 DOC (RNBx)

1    Grant any and all further relief this Court deems just and proper.

2    DATED: February ___, 2008          Respectfully submitted,

3                                        RANJANA NATARAJAN, SBN 230149
                                         MARK D. ROSENBAUM, SBN 59940
                                         NORA ADRIANA PRECIADO SBN
4                                        239235
                                         ACLU FOUNDATION OF SOUTHERN
5                                        CALIFORNIA
                                         1616 Beverly Blvd.
6                                        Los Angeles, CA 90026
                                         Telephone:  (213) 977-9500
7                                        Facsimile:   (213) 250-3919
                                         Email: rnatarajan@aclu-sc.org
8
                                         LINTON JOAQUIN, SBN 73547
9                                        KAREN C. TUMLIN, SBN 234691
                                         NATIONAL IMMIGRATION LAW
10                                       CENTER
                                         3435 Wilshire Blvd., Suite 2850
11                                       Los Angeles CA 90010
                                         Tel:   (213) 639-3900
12                                       Fax:   (213) 639-3911
                                         Email: tumlin@nilc.org
13
                                         MARK B. HELM, SBN, 115711
14                                       JACOB S. KREILKAMP, SBN 248210
                                         MUNGER, TOLLES & OLSON LLP
15                                       355 South Grand Ave. 35th Floor
                                         Los Angeles CA 90011-1560
16                                       Tel:   (213) 683-9260
                                         Fax:   (213) 593-2960
17                                       Email: Jacob.Kreilkamp@mto.com

18                                       JULIE SU, SBN 174279
                                         MARK YOSHIDA, SBN 195778
19                                       YUNGSUHN PARK, SBN 239356
                                         ASIAN PACIFIC AMERICAN LEGAL
20                                       CENTER
                                         1145 Wilshire Blvd., 2nd Floor
21                                       Los Angeles, CA 90017
                                         Tel:   (213) 977-7500
22                                       Fax:   (213) 977-7595
                                         Email: ypark@apalc.org
23

24                                       By: _____
25                                                    KAREN C. TUMLIN

26                                       Attorneys for Plaintiffs

27

28

4397469.1                               28
─────────────────────────────────────────────
FIRST AMENDED COMPLAINT
SACV07-1394 DOC (RNBx)

# CERTIFICATE OF SERVICE

I, Kathi Morimoto, declare as follows:

I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 355 South Grand Avenue, Los Angeles, California 90071-3197, in said County and State.  On February 1, 2008, I served the following document(s):

**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF-CLASS ACTION; PETITIONS FOR NATURALIZATION**

on interested party(ies), by placing a true copy(ies) thereof in a sealed envelope(s) addressed as shown by the following means of service:

Elizabeth Stevens, Esq.
Senior Litiigation Counsel
U.S. Department of Justice
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
Tel: 202-616-9752
Fax: 202-233-0397
Email:  elizabeth.stevens@usdoj.gov

☑    **BY MAIL:** I placed a true copy(ies)/the original(s) of said document(s) in a sealed envelope(s) addressed as indicated above, and deposited said envelope(s) in interoffice mail for collection and deposit with the United States Postal Service at 355 South Grand Avenue, Los Angeles, California, on the date indicated above.  I am familiar with the firm's practice of collection and processing correspondence for mailing.  It is deposited with the United States Postal Service in the ordinary course of business with first class postage thereon fully prepaid on the same day it is placed for collection, processing, and mailing.

☐    **BY FACSIMILE:** From facsimile number (213) 687-3702, I caused such document(s) to be transmitted by facsimile machine, to the party(ies) and number(s) indicated above.  The facsimile machine used complies with Rule 2003(2).  The transmission was successfully completed without error.

☑    **BY ELECTRONIC TRANSMISSION:** The document(s) was transmitted electronically on this date to the designated electronic address(es) listed above.

☐    **BY FEDEX:** I placed a true copy(ies) of the above mentioned document(s) in a sealed envelope or package designated by FedEx, addressed to the person(s) indicated above for overnight delivery and deposited same in interoffice mail for collection and deposit to an employee authorized by FedEx to receive such parcel on that date, following ordinary business practices.  I am familiar with the firm's practice of collection and processing correspondence/  It is deposited with an employee authorized by FedEx to receive such parcel with delivery fees paid or provided for the same day it is placed for collection.

☑    I am employed in the office of a member of the bar of this court, and that the foregoing document(s) was(were) printed on recycled paper.

☐    **(STATE)**          I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☑    **(FEDERAL)**          I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 1, 2008.

_Kathi Morimoto_
Kathi Morimoto